NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Hillsborough-northern judicial district
No. 2022-0196

CLEARVIEW REALTY VENTURES, LLC

v.

CITY OF LACONIA


JHM HIX KEENE, LLC

v.

CITY OF KEENE


VIDHI HOSPITALITY, LLC

v.

CITY OF KEENE


NAKSH HOSPITALITY, LLC

v.

CITY OF MANCHESTER

298 QUEEN CITY HOTEL, LLC

v.

CITY OF MANCHESTER


ANSHI HOSPITALITY, LLC

v.

CITY OF MANCHESTER


700 ELM, LLC

v.

CITY OF MANCHESTER


BEDFORD-CARNEVALE, LLC

v.

TOWN OF BEDFORD


CARNEVALE HOLDINGS, LLC

v.

TOWN OF BEDFORD

Argued: December 13, 2022
Opinion Issued: April 18, 2023

Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Hilary H. Rheaume and Roy W. Tilsley, Jr. on the brief, and Roy W. Tilsley, Jr. orally), for the plaintiffs.

Mitchell Municipal Group, P.A., of Laconia (Laura Spector-Morgan on the joint brief for defendant City of Laconia and orally for all defendants).

Devine Millimet & Branch, PA, of Manchester (Matthew R. Johnson on the joint brief), for defendant City of Keene.

Peter R. Chiesa, of Manchester, on the joint brief, for defendant City of Manchester.

Upton & Hatfield, LLP, of Portsmouth (Russell F. Hilliard on the joint brief), for defendant Town of Bedford.

MACDONALD, C.J.  RSA 76:21, I, provides that local officials "shall prorate" a building's assessment "[w]henever a taxable building is damaged due to unintended fire or natural disaster to the extent that it renders the building not able to be used for its intended use."  RSA 76:21, I (Supp. 2022).  The plaintiffs — Clearview Realty Ventures, LLC, JHM HIX Keene, LLC, VIDHI Hospitality, LLC, NAKSH Hospitality, LLC, 298 Queen City Hotel, LLC, ANSHI Hospitality, LLC, 700 Elm, LLC, Bedford-Carnevale, LLC, and Carnevale Holdings, LLC — own commercial real estate on which they operate hotels, some of which offer restaurant services along with banquet or function facilities.  They contend that the COVID-19 pandemic was a "natural disaster" and that their buildings were "damaged" within the meaning of the statute.

The plaintiffs sought relief from the municipalities involved: the Cities of Laconia, Keene, and Manchester, and the Town of Bedford.  After denial of their applications, they appealed to the superior court in the applicable county.  See RSA 76:21, VII; RSA 76:17 (Supp. 2022).  Observing that there were thirteen separate lawsuits pending in six counties, they then filed an assented-to motion for interlocutory transfer without ruling and motion to consolidate to allow the coordinated transfer of the common questions of law to this court.

In this interlocutory transfer without ruling (Messer, J.), we are asked to determine: (1) whether, for purposes of RSA 76:21, the COVID-19 pandemic constitutes a "natural disaster"; and (2) if so, whether the buildings owned by the plaintiffs were "damaged" by COVID-19 such that they were "not able to be used for [their] intended use" within the meaning of RSA 76:21, I.  We answer the second question in the negative.

I. Background

We accept the facts as presented in the interlocutory transfer statement. The facts presented principally focus on the actions taken by federal and state authorities in response to the outbreak of COVID-19, summarized here.  On March 13, 2020, the President of the United States declared a "National

Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak." On that same day, the Governor issued Executive Order 2020-04, in which he declared a State of Emergency caused by COVID-19. Executive Order 2020-04, available at https://www.governor.nh.gov/sites/g/files/ehbemt336/files/documents/2020-04.pdf (last visited April 13, 2023). Over the next several months, the Governor issued emergency orders restricting the capacities and operations of lodging providers such as hotels, motels, bed and breakfasts, inns, and short term rentals. See, e.g., Emergency Order #17 Pursuant to Executive Order 2020-04, available at https://www.governor.nh.gov/sites/g/files/ehbemt336/files/documents/emergency-order-17.pdf (last visited April 13, 2023) (declaring the "Closure of non-essential businesses and requiring Granite Staters to stay at home"). The Governor also issued emergency orders that restricted the capacities and operations of restaurants and other food services. See, e.g., Emergency Order #2 Pursuant to Executive Order 2020-04, available at https://www.governor.nh.gov/sites/g/files/ehbemt336/files/documents/emergency-order-2.pdf (last visited April 13, 2023) (declaring a "Temporary prohibition on scheduled gatherings of 50 or more attendees and onsite food and beverage consumption").

The Governor extended the State of Emergency declared in Executive Order No. 2020-04 several times with the last extension being issued on May 28, 2021. Executive Order 2021-10, available at https://www.governor.nh.gov/sites/g/files/ehbemt336/files/documents/2021-10.pdf (last visited April 13, 2023). Executive Order No. 2020-04 expired on June 11, 2021. See id. As a result, all emergency orders that were issued pursuant to Executive Order No. 2020-04 also expired on June 11, 2021. See id.

Aside from facts relating to regulatory steps taken by government officials, there are no facts before us supporting the plaintiffs' contention that COVID-19 is a "natural disaster" within the meaning of the statute or facts relating to how the plaintiffs' buildings were damaged "due to" COVID-19. See RSA 76:21, I.

The plaintiffs all filed timely abatement applications with their respective municipalities on or before March 1, 2021. In their applications, the plaintiffs sought an abatement of real estate taxes, pursuant to RSA 76:17, and proration of real estate taxes, pursuant to RSA 76:21. The municipalities either denied the plaintiffs' abatement requests or granted partial abatements.

On or about August 31, 2021, the plaintiffs each filed a petition in superior court seeking abatement and proration of their real estate taxes pursuant to RSA 76:17 and RSA 76:21. See RSA 76:21, VII. With respect to their claims for proration under RSA 76:21, the plaintiffs contended "that the

COVID-19 pandemic qualifies as a natural disaster that caused damage to their respective buildings and, as a result of the natural disaster, their buildings were not able to be used, or fully used, for their intended use."

In March 2022, the plaintiffs filed an assented-to motion for interlocutory transfer with the trial court, which was granted (Messer, J.). We accepted both transferred questions. See Sup. Ct. R. 9.

II. Analysis

Answering the transferred questions requires that we engage in statutory interpretation. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. St. Onge v. Oberten, LLC, 174 N.H. 393, 395 (2021). We give effect to every word of a statute whenever possible and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We also construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result. Id. However, we do not construe statutes in isolation; instead, we attempt to construe them in harmony with the overall statutory scheme. Id.

RSA 76:21, I, provides: "Whenever a taxable building is damaged due to unintended fire or natural disaster to the extent that it renders the building not able to be used for its intended use, the assessing officials shall prorate the assessment for the building for the current tax year." The proration "shall be based on the number of days that the building was available for its intended use divided by the number of days in the tax year, multiplied by the building assessment." RSA 76:21, II. The statute caps the "total tax reduction from proration under this section for any city or town" to "an amount equal to 1/2 of one percent of the total property taxes committed in the tax year." RSA 76:21, V. Finally, the statute states that "[n]othing in this section shall limit the ability of the assessing officials to abate taxes for good cause shown pursuant to RSA 76:16." RSA 76:21, VI.

Thus, RSA 76:21 "offers a streamlined recovery process and a mandatory prorated calculation." Carr v. Town of New London, 170 N.H. 10, 16 (2017). This tax reduction based on damage to a building is therefore distinct from an abatement, which concerns "whether the government has taxed the plaintiff out of proportion to other property owners in the taxing district." Porter v. Town of Sandwich, 153 N.H. 175, 177 (2006).

Under this statute, to qualify for the proration, the plaintiffs must first establish that their buildings were "damaged" and, second, that the "damage" was "due to unintended fire or natural disaster." RSA 76:21, I. Because we conclude that the buildings were not damaged, we do not reach the second element of the statute.

5

The plaintiffs argue that "the buildings subject to this [interlocutory transfer] were damaged by COVID-19, such that they were not able to be used for their intended use under the meaning of RSA 76:21, I." They assert that "RSA 76:21 does not require a showing of direct and/or physical loss to the property." The defendants contend that the plaintiffs' "purely economic loss cannot be read to be within the terms of RSA 76:21 as the type of damage for which the statute was intended to provide relief." We agree with the defendants.

The plaintiffs specifically argue that the buildings were "damaged" because "[s]ince the [plaintiffs] were not allowed to carry on business, the hotels suffered a significant decline in income" and "the reduced income negatively impacts the fair market value of the taxable buildings." We decline to read economic loss without physical damage into RSA 76:21 where it does not exist in the plain language of the statute. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." LLK Trust v. Town of Wolfeboro, 159 N.H. 734, 736 (2010). The statute first requires physical damage to the building before considering any economic loss. Thus, the plaintiffs' interpretation of the statute contradicts the plain and ordinary meaning of RSA 76:21, I.

The overall statutory scheme supports a requirement of physical damage to a building itself. RSA 76:21, II states that "[t]he proration of the building assessment shall be based on the number of days that the building was available for its intended use divided by the number of days in the tax year, multiplied by the building assessment." (Emphasis added.) Notably, RSA 76:21, II does not list as a factor the number of days that a business experienced economic loss.

Accordingly, we hold that the taxable buildings subject to this interlocutory transfer were not "damaged" so as to be entitled to a proration of real estate taxes under RSA 76:21, I. We answer the second question in the negative. In light of this response, we need not answer the first question.

Remanded.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

6